# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEADING MANUFACTURING SOLUTIONS, LP,<br><br>Plaintiff,<br><br>vs.<br><br>HITCO, LTD., et al.,<br><br>Defendants. | CASE NO. 15cv1852-LAB (PCS)<br><br>**ORDER DENYING MOTION TO STRIKE OR DISMISS; AND**<br><br>**ORDER GRANTING MOTION FOR LEAVE TO AMEND**<br><br>**[DOCKET NUMBERS 40, 60]** |

After Plaintiff Leading Manufacturing Solutions, LP ("LMS") filed a second amended complaint ("SAC") that added Theodore B. Smith, Jr. as a Defendant, Smith filed a motion to strike certain allegations and to dismiss. Smith contends that he was added as a Defendant solely on the basis of what LMS learned during settlement negotiations. He argues that this violates Fed. R. Evid. and that the allegations should therefore be stricken. After those allegations are stricken, he argues, the SAC fails to state a claim against him. He also seeks dismissal of the SAC's two claims against him. Defendants, HITCO, LTD. and HITCO, INC. (the "HITCO Defendants") did not move to dismiss, but instead filed an answer.

After that, LMS sought leave to file a third amended complaint ("TAC"), which Defendants all opposed.

/ / /

## I. Motion to Strike and to Dismiss

### A. Legal Standards

A Rule12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003) (citations and quotation marks omitted).

At the pleading stage, the Court may consider not only the complaint itself, but also documents it refers to, whose authenticity is not questioned, and matters judicially noticed. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). The Court also need not accept as true allegations that contradict properly subject to judicial notice, or incorporated into the complaint. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

Under Fed. R. Civ. P. 12(f), the Court can strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter," either sua sponte or in response to a motion.

/ / /

/ / /

**B. Discussion: Motion to Strike**

Shortly after LMS filed its amended complaint, Smith says, the parties engaged in settlement negotiations, during which financial information was exchanged. This, he says, led to LMS's discovering that the two Defendants, HITCO, LTD. and HITCO, INC., were insolvent. As a result, LMS soon requested leave to amend. Among other things, the SAC added Smith as a Defendant. Smith argues that information LMS obtained during the settlement discussions led to LMS pointing the finger at Smith. This, he argues, violates Fed. R. Evid. 408, and he asks the Court to strike all allegations that Smith is the alter ego of the two HITCO entities. Smith's motion identifies particular allegations he says were made only after LMS learned of the HITCO entities' insolvency. (Mot. (Docket no. 40-1) at 4:1–10.)

Under Fed. R. Evid. 408(a), statements made during settlement negotiations cannot be admitted for certain purposes. These include proof of the validity or amount of a disputed claim, or impeachment by prior inconsistent statement. But under Rule 408(b), the evidence may be admitted for other purposes. Smith relies on *McCrary v. Elations Company, LLC*, 2013 WL 6403073 (C.D. Cal., July 12, 2013); *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 2009 WL 1292913 (S.D. Cal., May 6, 2009); and the unpublished *Ford v. United States*, 917 F.2d 566 (9th Cir. 1990).[1]

Neither *McCrary* nor *Vaxiion* helps Smith's position. In part, both stand for the unremarkable proposition that statements made in connection with settlement discussions are not admissible as evidence. Here, LMS is not seeking to admit any documents or statements from settlement discussions as evidence.

In *Vaxiion*, the plaintiff asked the court to allow an expert witness to rely on a confidential document that was disclosed in connection with settlement discussions and subject to a protective order. The court refused, noting first that the witness was not an expert, and also that allowing the witness to rely on the document would violate the

---

[1] Under Ninth Circuit Rule 36-3(c), this case is not citable. But even if it were, it is not particularly helpful here because the pertinent parts of its holding are the same as the two more recent cases.

1 protective order. The court also opined that even though expert witnesses can rely on
2 inadmissible evidence, allowing the expert to rely on evidence excluded under Rule 408 and
3 testify on that basis amounted to use of that evidence at trial. In other words, the Rule 408
4 concern was improper use of the document at trial.

In *McCrary*, the plaintiff bought and used the defendant's supplement believing that it would help his osteoarthritis. The defendant sent letters to plaintiff's counsel in an effort to settle the case. Among other things, the letters mentioned osteoarthritis studies. The plaintiff alleged the content of those letters in an effort to characterize the supplement as being intended to treat osteoarthritis. The Court struck those allegations as immaterial, because their inadmissibility meant that they could not help establish liability; in other words, statements in the letters could not form any part of the plaintiff's claim. 2013 WL 6403073 at *5.

It does not follow, however, that information gained during settlement discussions cannot be used. In particular, it can be used to show good cause to amend the complaint. *Separzadeh v. Iconix Brand Group, Inc.*, 2016 WL 6126386, slip op. at *4 (S.D. N.Y. Oct. 19, 2016). This is because, through discovery, a plaintiff may be able to obtain other admissible evidence to support the claim. *See id*. (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)) (holding that a motion to strike allegations will be denied unless a plaintiff shows that no evidence in support of the allegation would be admissible). In cases where a complaint alleges what was said during settlement discussions in an effort to establish liability, no admissible evidence could support those allegations. But where, as here, a plaintiff could potentially obtain independent evidence to support the allegations, Rule 408 provides no basis for striking them. *See Medical Assur. Co., Inc. v. Weinberger*, 2011 WL 2115662, at *2 (N.D. Ind., May 26, 2011) ("Confidentiality does not extend to information [ob]tained from sources independent of the settlement negotiations . . . ."); *Wu v. Pearson Educ., Inc.*, 2010 WL 3791676 at *1 (S.D. N.Y. Sept. 29, 2010) (denying as moot request to strike allegations based on information, because the same information was later obtained through discovery).

Similarly, communications during settlement negotiations are discoverable. *In re RDM Sports Group, Inc.*, 277 B.R. 415, 433–34 (N.D. Ga., 2002) (discussing lines of cases with varying standards for discoverability).[2] If, as Smith contends, there were some kind of prohibition on using *information* derived from settlement discussions, discovery would not be allowed at all because none of the evidence learned as a result would be admissible.

It is worth noting that LMS's motion for leave to amend says LMS has already acquired independent evidence, in the form of tax returns. (Docket no. 60-2, ¶ 6.) Because the SAC alleges only facts that could potentially be supported by independent evidence, and does not allege the contents of the document at issue here, the request to strike is **DENIED**.

**C. Motion to Dismiss**

The first argument in favor of dismissal is that, once the allegations made against Smith in violation of Rule 48 have been stricken, the claims against him cannot stand up. Because the request to strike was denied, that argument must fail as well.

Secondly, the motion argues that the SAC does not meet pleading standards, and in this it is on stronger ground. The SAC argues that the HITCO Defendant's corporate veil should be pierced, under an alter ego theory, to hold Smith liable. Alter ego liability can be found when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgt. Co.*, 39 Cal.3d 290, 300 (1985). The decision whether to pierce the veil depends on the circumstances of each particular case. *Id*. To make this decision, courts consider a variety of factors. *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838–40 (Cal. App. 1 Dist. 1962). The doctrine is applied sparingly and reluctantly, and is approached with caution. *Santa Clarita Org. for Planning & Env't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (Cal. App. 2 Dist. 2016). Difficulty in enforcing a
/ / /

---

[2] Some courts place no additional limits on this kind of discovery, while others require a higher showing that the information is likely to lead to admissible evidence.

judgment or collecting a debt does not satisfy the "injustice" part of the standard. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (Cal. App. 5 Dist. 2000).

The specific factors the SAC cites are undercapitalization, commingling of funds, use of the corporate form for Smith's personal gain, failure to observe corporate formalities, and fraudulent intent. The allegations, however, are unquestionably a formulaic recitation of conclusions, and contain almost no specific facts.

The few facts it does contain do not support the claim. Notably, the allegation regarding Smith's use of his own money to pay creditors of HITCO does not seem to support any of the factors. This is sometimes an issue in bankruptcy cases, where other creditors might have cause to complain; or in breach of fiduciary cases where plaintiffs allege mismanagement. *See, e.g.*, *In re Del-Met Corp.*, 322 B.R. 781, 815 (Bankr. M.D. Tenn. 2005) (citing claims that majority shareholders ran company into insolvency through a series of bad decisions, including selective payment of creditors). But paying corporate debts or advancing funds to a corporation does not amount to misconduct or show injustice unless done with a fraudulent or deceptive intent. *Sonora Diamond*, 83 Cal. App. 4th at 539 (citing *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1263 (10th Cir. 1989)).

Because the SAC's alter ego allegations against Smith do not meet the pleading standard set forth in *Twombly* and *Iqbal*, they are **DISMISSED**.

**Motion for Leave to Amend**

**A. Legal Standards**

Under Fed. R. Civ. P. 15(a), leave to amend should be freely granted when justice so requires. This policy is applied with great liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). When deciding whether to grant leave, the Court considers factors such as undue delay, bad faith, undue prejudice to the opposing party, and futility of amendment. *Smith v. Pac. Properties & Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir.2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

/ / /

/ / /

**B. Discussion**

Defendants' opposition depends partially on the exclusion of allegations they believed would be stricken for Rule 408 violations. The Court's determination that those allegations were not improper undercuts their opposition.

The opposition also contends that they would be unfairly prejudiced because the motion was filed a year after the original complaint was filed, and when discovery was nearly complete. But the proposed TAC does not differ much from the SAC, which included claims against Smith. The only likely source of prejudice is delay, if LMS sought and were granted additional discovery. But the opposition does not point out any new discovery that would be needed.

Defendants bolster their unfair prejudice argument by suggesting that forcing them to respond to a third amended complaint would be burdensome. The Court is not persuaded by this argument, for two reasons. First, the liberal policy favoring amendment contemplates that defendants will be required to respond to amended complaints. Second, the two HITCO Defendants filed an answer to the SAC, and can presumably file an edited version of that, which reduces the burden on them. Other than as noted above, Smith never responded to the merits of the claims against him in the SAC, so he would have to do that regardless of whether leave to amend were granted.

The proposed TAC adds more factual allegations to support alter ego liability against Smith. (Docket no. 60-3, ¶¶ 7–8.) These include, among others, an allegation that Smith at all times was in control of the HITCO Defendants and caused them to enter into purchase agreements knowing that they were insolvent. The proposed TAC alleges various misrepresentations Smith made about these Defendants' status as established multinational businesses, in an effort to persuade LMS to rely on their ability to pay.

Some of the allegations, for reasons explained above, do not advance the argument in the way they are intended to. But they may still be relevant for other purposes. The allegations that Smith personally paid some of the companies' loans, or personally bought supplies for the companies to use, do not necessarily amount to commingling. The

proposed TAC hints that Smith may have selectively paid debts to dispel concerns about the companies' creditworthiness, but this is never alleged directly. It does, however, allege that Smith treated the companies' losses as his own personal losses for tax purposes, and deducted his personal expenses on the companies' taxes.

The alleged facts about the HITCO Defendants' finances are relevant to show undercapitalization. No factual allegations make clear they were undercapitalized at the outset, but they are alleged to have become undercapitalized. And although Smith knew this, the proposed TAC alleges, he continued to arrange for them to enter into purchase agreements, knowing they could not pay.

Perhaps most significantly, the proposed TAC alleges that HITCO, LTD's corporate status had been allowed to lapse, so that it was no longer recognized as a corporation in any state.

For the breach of contract claim against Smith to succeed, the corporate veil must be pierced, and the TAC alleges facts that are arguably sufficient to establish that Smith was the HITCO Defendants' alter ego. But the fraud claim could succeed against Smith based on his own actions, even if the corporate veil were not pierced.

Defendants argue at a fairly general level that the proposed TAC is insufficient, but the Court is not persuaded that amendment would be futile or that leave to amend should be denied for any other reason.

### C. Conclusion and Order

For the reasons set forth above, the motion for leave to amend is **GRANTED**. LMS shall promptly file the TAC.

**IT IS SO ORDERED**.

DATED: March 24, 2017

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge