# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEADING MANUFACTURING SOLUTIONS, LP,<br><br>Plaintiff,<br><br>v.<br><br>HITCO, LTD., et al.,<br><br>Defendants. | Case No.: 15cv1852-LAB (BGS)<br><br>**ORDER DENYING MOTION TO AMEND JUDGMENT; AND**<br><br>**ORDER LIFTING STAY**<br><br>**[DOCKET NUMBER 185.]** |

At trial, the Court found for Plaintiff Leading Manufacturing Solutions LP ("LMS") and against Defendants jointly and severally, and awarded damages. Defendants said they intended to file a motion to make additional findings. They have filed that motion, seeking relief from the judgment under Fed. R. Civ. P. 52(b) and 59(a)(2) and (e). (Docket no. 185.)

A motion under Rule 52 or 59 is intended to correct manifest errors, or to consider newly discovered evidence or new law. *Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1117 (S.D. Cal., 2012), *aff'd* 768 F.3d 843 (9th Cir. 2014). A Rule 52 motion is "not intended to serve as a vehicle for a rehearing." *Crane-McNab v. Cnty. of Merced*, 773 F. Supp. 2d 861, 873 (E.D. Cal., 2011). A

Rule 59 motion, similarly, is an extraordinary remedy, to be used sparingly. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Although the Court recognizes that it has discretion to reconsider its own orders at any time before final judgment is entered, *see* Fed. R. Civ. P. 54(b), reconsideration on a party's motion is appropriate only in limited circumstances such as where the Court committed clear error. *See Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

**Defendants' Arguments**

Defendants contend that the Court manifestly misunderstood New York's alter ego law. They argue that the claims were based on a "simple breach of contract," (Mot. at 2:16–18) and that the Court pierced the corporate veil merely to make sure that Leading Manufacturing Solutions ("LMS") could collect on the judgment. Continuing their argument that the claims were based on a simple breach of contract and nothing more, they argue that the Court could only pierce the corporate veil if it found that Smith's domination of Hitco, Ltd. caused the contract breach. Finally, they argue that, however the first two issues are decided, Smith's liability is limited to the amount he siphoned off from the corporations.

Defendants' arguments are based primarily on a misreading of the Court's findings, and secondarily on a misunderstanding of New York law.

**The Court's Findings**

At the close of trial, the Court announced its findings and verdict from the bench, and then issued a written order summarizing, memorializing, and supplementing them. (*See* Docket no. 177 (written findings) ("Findings") at 1:18–23.)

The Findings make clear the Court did not pierce the corporate veil merely to make sure LMS could collect the money it was owed:

> If LMS's only recourse is against Hitco, Ltd., Hitco, Ltd.'s debt will go unpaid.

> These facts, standing alone do not establish alter ego. Businessmen and businesswomen are permitted to incorporate in order to escape personal liability. *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417 (N.Y. App. 1966). And the mere fact that a plaintiff will otherwise remain unpaid does not constitute the kind of injustice that warrants a finding of alter ego. *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).

(Findings at 5:18–6:8.) The Court also discussed at length both the conditions for a finding of alter ego, and factors New York courts consider when determining whether the corporate veil should be pierced. (*Id.*, 6:9–7:9.)

Defendants' second argument, that the corporate veil could be pierced only if the factors leading to a finding of alter ego (*e.g.*, Smith's domination of Hitco, Ltd.) caused the contract breach, is too narrow to be a correct statement of the law. They argue that the Court's decision ignored the New York Court of Appeals' decision in *See Morris v. N.Y. State Dep't of Taxation & Finance*, 82 N.Y.2d 135, (1993), and suggest that the Court relied on the Second Circuit's mistaken pre-*Morris* standard. But the Court's decision relies on numerous cases that interpret and apply *Morris* and its progeny, and the only two pre-*Morris* cases the Findings mention (*Walkovszky* and *William Passalacqua*) are cited for other issues that *Morris* did not change.

"Broadly speaking, the courts will disregard the corporate form, or, to use accepted terminology, 'pierce the corporate veil', whenever necessary 'to prevent fraud or to achieve equity' " *Morris*, 82 N.Y.2d at 140. Generally, all that is required is that a defendant dominated the entity, and that domination was used to commit a fraud or wrong against the plaintiff. *Id.* at 140–41. The fraud or wrong does not need to be a breach of contract (although, as discussed below, Smith's domination of Hitco, Ltd. led to the breach). And the obligation that would go unpaid unless the veil is pierced need not have arisen fraudulently or wrongfully; ordinary business obligations will do. *See Serio v. Arda Ins. Co.*, 761 N.Y.S.2d 1, 2 (N.Y. Supreme

Ct. 2003) (reinsurer's corporate veil pierced after shareholder diverted assets to another entity he owned, thus "depriv[ing the reinsurer] of the funds needed to meet its reinsurance obligations"); *Baby Phat Holding Co., LLC v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (N.Y. Supreme Ct. 2014) (explaining that, while fraud would satisfy the wrongdoing requirement, "other claims of inequity or malfeasance will also suffice").

For example, it is enough if a defendant used his dominant position to divert or siphon off corporate assets, leaving creditors unable to collect on obligations, or making the entity judgment proof. *See Grigsby v. Francabandiero*, 58 N.Y.S.3d 835, 837 (N.Y. Supreme Ct. 2017) (taking "actions calculated to make [an entity] judgment-proof by undercapitalizing [it], and dissolving and thereafter diverting the assets . . . to a new entity" justified piercing the veil); *Baby Phat*, 997 N.Y.S.2d at 70 ("Allegations that corporate funds were purposefully diverted to make it judgment proof . . . are sufficient to satisfy the pleading requirement of wrongdoing which is necessary to pierce the corporate veil on an alter-ego theory . . . .")

Defendants argue that this principle is limited to situations where the judgment was entered before the defendant siphoned off corporate assets, but this is unconvincing. New York's courts appear to make no such distinction, but apply the alter ego doctrine even where obligations have not been reduced to judgment. For example, *Cortlandt Street Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 50 (2018) dealt with allegations that defendants had created corporations which issued notes of indebtedness. Defendants allegedly then distributed the loan proceeds to themselves, leaving the corporations unable to pay noteholders. The intended future result, the court noted, was that the corporations "would be rendered insolvent and unable to pay" the creditors. There, the obligation to pay was still in the future at the time the fraud was completed. Other cases also recognize future or contingent liabilities as potentially warranting application of the doctrine. *See, e.g., Grammas v. Lockwood Assocs., LLC*, 944 N.Y.S.2d 623, 630

(N.Y. Supreme Ct., 2012); *Baby Phat*, 997 N.Y.S.2d at 70; *Serio*, 761 N.Y.S.2d at 2.

The Court found that Smith's domination of the corporations permitted him to do just this. He diverted the corporations' assets to his own use, having them pay his own personal expenses and apparently taking advantage for tax purposes of their ongoing losses. Without Smith's regular cash infusions, the corporations would not have remained afloat. He readily made these contributions when he believed it would benefit him, but withheld them when he believed it would not. (*See* Findings at 15:25–16:2.) He also treated himself as a favored creditor, making sure that the corporations paid debts they owed to him, while leaving other creditors (specifically, LMS) out in the cold. For example, during the course of litigation, he caused Hitco, Ltd. to issue him promissory notes and then to pay those notes by transferring the corporations' only substantial assets to himself. (*See id.* at 5:13–18; 9:10–15; 11:17–12:19.) He did this, apparently, on his own initiative, without having the assets properly valued, without observing corporate formalities, and in such a way that favored him at the corporations' expense.

But even if Defendants were correct that Smith's domination of the corporations had to lead to breach of the contract, that happened here. The Court found that Smith made decisions, including those leading up to breach of the contract, on the basis of what would serve his own interests, rather than the corporations' best interests. (Findings at 12:20–13:3.)

For the first time, Defendants argue that, if some of LMS's injury is not attributable to Smith's domination of the corporations, it should be apportioned. For example, if Smith's domination caused only a part of LMS's damages and resulted in only a part of the judgment being uncollectible, they contend, he is only liable for that portion. This issue was not tried (*see* Final Pretrial Order, Docket no. 169, at 2:11—6:14), and while financial evidence in general was presented, no evidence on this point was presented. This issue was waived, and is not properly

5

15cv1852-LAB (BGS)

raised in a Rule 52 motion. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (citation omitted) (noting that claims, issues, defenses, and theories of damages not included in the pretrial order are waived); *Crane-McNab*, 773 F. Supp. 2d at 877 (holding that a Rule 52(b) motion may not be used to raise arguments for the first time that could reasonably have been raised earlier in the litigation).

But even if Defendants had not waived this issue, they would not prevail. Smith diverted corporate assets over the course of years and dominated the two entities at all relevant times. His domination of Hitco, Ltd. also led directly to the breach. (*See* Findings at 15:27–16:2.) Because his domination of the corporations caused LMS's damages, apportionment under the partial-causation theory Defendants now raise is inappropriate.

Defendants' motion to make additional findings and amend the judgment (Docket no. 185) is **DENIED**.

**Stay of Judgment**

During the pendency of Defendants' Rule 52(b) motion, the Court stayed judgment, contingent on their posting an acceptable bond.

Plaintiff has filed an ex parte motion to register judgment, citing 28 U.S.C. § 1963. It seeks the Court's leave to register judgment in this case in the Eastern District of New York and the Southern District of Florida. In their opposition, Defendants conceded that they deliberately failed to post a bond as ordered. (*See* Docket nos. 199 (order); and 201 at 2:27–3:2.) Their reasoning, which is rather difficult to follow, appears to rest on the mistaken view that they were ordered to obtain a bond that would pay the full judgment regardless of the outcome of the case. (*See* Docket no. 201 at 2:24–27 ("[T]he Court, in crafting its bond requirements, decided that even if Mr. Smith is found not liable for the Judgment on the theory of alter-ego . . . he nonetheless will be 'on the hook' to pay Plaintiff.") This is a misreading of the Court's order.

The purpose of a supersedeas bond under Fed. R. Civ. P. 62(b) is to secure an appellee from the "risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment" that may result from the stay. *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988). A bond that might or might not protect LMS's judgment would not fulfill this purpose. The Court did not dictate what the bond had to say, only that it had to guarantee that LMS would be paid whatever it ultimately recovered. Otherwise, the Court would not stay the judgment. *See Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966) (Harlan, J.) (appellant's right to a stay pending appeal is contingent on posting a bond); *Hardesty v. Sacramento Metropolitan Air Quality Mgt. Dist.*, 2019 WL 2715616 (E.D. Cal., June 28, 2019) (noting that stays of judgment unsecured by supersedeas bonds are reserved for unusual circumstances).

The problem with the bond Defendants selected and posted is that it would cover the judgment only in the event that Plaintiff prevailed completely on all issues and against all three Defendants; even a small modification in the Court's judgment, or a change that did not affect the amount of the award would relieve the bond's issuer of any obligation to pay. Defendants are within their rights not to post a bond that satisfies Rule 62(b)'s purposes, but having made this election they are also not entitled to a stay. The stay is **ORDERED LIFTED**, and LMS may seek to enforce the judgment.

The existing injunction, requiring Smith to hold the patents and not transfer or encumber them, remains in place until Defendants pay the entire judgment, or until Smith is released from his obligation by this Court or another court. (*See* Findings at 18:7–9.)

/ / /

/ / /

/ / /

/ / /

This order does not prevent a court from ordering Smith to sell, transfer, or encumber the patents in order to enforce the judgment in this case.

**IT IS SO ORDERED.**

Dated: August 9, 2019

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge